UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                              11-cr-568 (PKC)

       -against-

                                                                              <u>ORDER</u>

HILTON MARRERO,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.:

        Defendant Hilton Marrero, represented by counsel, moves on two grounds for sentence reduction. (Doc 553). Marrero seeks a sentence reduction under 18 U.S.C. § 3582(c)(2) based on Amendments 782 and 788 to the United States Sentencing Guidelines (the "Guidelines"), and contends that he is eligible for a reduction under this provision following the Second Circuit's decision in <u>United States v. Townsend</u>, 897 F.3d 66 (2d Cir. 2018). Marrero also moves for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), asserting "extraordinary and compelling reasons" related to the COVID-19 pandemic. Marrero has served approximately 115 months of his sentence of principally 180 months, a sentence that was 82 months below the low end of the applicable Guidelines.

        Marrero pled guilty to a single count of conspiring to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21 U.S.C. §§ 846, 841(b)(1)(A). Marrero was responsible for distributing between one to three kilograms of heroin. (Dec. 18, 2012 Sentencing Tr. at 11 (Doc 327)). The Presentence Report ("PSR") prepared by the Office of Probation calculated Marrero's Guidelines range as 262 to

327 months' imprisonment.  Because Marrero had two prior felony convictions involving controlled substances, his Guidelines calculation was based upon the inclusion of the career offender enhancement under U.S.S.G. § 4B1.1.  (PSR ¶¶ 51–62).  At sentencing, the Court adopted the Guidelines calculation in the PSR.  (Sentencing Tr. at 4).  The Court sentenced Marrero principally to a below-Guidelines term of 180 months' imprisonment followed by five years of supervised release.  (Id. at 12–13).

The Court heard argument from the parties and, for reasons explained, Marrero's application will be denied.

DISCUSSION

I. Sentence Reduction Under Section 3582(c)(2).

The scope of sentence modification authorized under § 3582(c)(2) is "narrow" and not a "plenary resentencing."  Dillon v. United States, 560 U.S. 817, 826 (2010).  "A defendant is eligible for a sentence reduction if he was 'sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"  United States v. Jarvis, 883 F.3d 18, 21 (2d Cir. 2018) (quoting 18 U.S.C. § 3582(c)(2)); see also Dillon, 560 U.S. at 826–27 (explaining that "step one" under the section 3582(c)(2) analysis requires that the court determine "the prisoner's eligibility for a sentence modification").  The applicable policy statement is section 1B1.10 of the Guidelines.  United States v. Zapatero, 961 F.3d 123, 127 (2d Cir. 2020).  Under section 1B1.10(b)(1), a district court must "determine the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing, and "shall leave all other guideline application decisions unaffected."

Marrero seeks a sentence reduction based on Amendments 782 and 788 to the Guidelines, which lowered the base offense level for certain categories of drug-related offenses and authorized retroactive application.  However, Marrero concedes that the amendments would not have the effect of lowering his applicable Guidelines range absent a reevaluation of his status as a career offender.  Marrero argues that, after applying the lowered base offense level, the Court should not leave all other guideline application decisions unaffected but instead refrain from applying the career offender enhancement.  As support he cites United States v. Townsend, 897 F.3d 66 (2d Cir. 2018), in which the Second Circuit held that a conviction for the criminal sale of a controlled substance in the fifth degree, N.Y. Penal Law Section 220.31, could no longer serve as a predicate offense for a career offender designation.  Id. at 75.  A conviction under section 220.31 was one of the convictions that qualified Marrero as a career offender.  (PSR ¶ 60).

Marrero is not entitled to a sentence reduction under section 3582(c)(2).  Adoption of his argument would require the Court to alter a Guidelines application that was not affected by Amendments 782 and 788.  The Sentencing Commission's Application Note makes plain that a sentence should not be reduced if the new Guideline reduction would not have affected the defendant's Guideline range.  U.S.S.G. § 1B1.10 Application Note 1(a).  This is also inconsistent with the narrow scope of relief provided by section 3582(c)(2), authorizing only "a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."  Dillon, 560 U.S. at 826.  Marrero's citation to United States v. Moore is inapposite as the Second Circuit noted that its decision addressed First Step Act motions, and not whether a defendant was eligible for a reduction under section 3582(c)(2).  See 975 F.3d 84, 92 n.36 (2d Cir. 2020) ("[W]e note that we have previously held that First Step Act motions are not governed by 18

U.S.C. § 3582(c)(2)."). Marrero also cites United States v. Muhammed, No. 12-cr-337 (ADS), 2020 WL 978814 (E.D.N.Y. Feb. 28, 2020) that applied Townsend to reduce a sentence that was originally based on the defendant's status as a career offender. This Court respectfully considers the analysis in Muhammed to be inconsistent with its reading of Dillon and the applicable Sentencing Commission policy statement.

In the PSR, the Guidelines range used in Marrero's original sentencing was based on his status as a career offender rather than on the amount of drugs involved in the offense. Because Amendments 782 and 788 do not have the effect of lowering Marrero's applicable Guideline range, he is ineligible for a sentence reduction pursuant to section 3852(c)(2). See United States v. Martinez, 572 F.3d 82, 85 (2d Cir. 2009) ("The fact that, but for his career offender designation, [defendant's] sentence would have been based on the now-amended crack cocaine guideline is of no relevance for purposes of a sentence reduction."); United States v. Suarez, 633 F. App'x 562, 563 (2d Cir. 2016) (summary order).[1]

Additionally, Marrero has waived his right to seek a modification of his sentence under section 3582(c)(2).[2] As the Court previously concluded, under the terms of his plea agreement, "Marrero knowingly and voluntarily waived his right to collaterally attack his sentence." (Doc 522 at 3–4) (citing United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000) and United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008)). The Second Circuit's decision in Townsend does not provide a basis for revisiting this conclusion. See Lee, 523 F.3d

---

[1] Marrero previously filed a petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Court denied this motion on grounds that Marrero waived the right to collaterally attack his sentence and that the claim was barred by the applicable statute of limitations. (Doc 522). While Marrero has not brought a second or successive claim under section 2255, the Court notes this would likely fail. See Fleury v. United States, No. 16-cv-4712 (DLC), 2019 WL 6124486, at *2 (S.D.N.Y. Nov. 19, 2019) ("As the Government correctly points out, however, Townsend cannot be considered, as it does not assert a new rule of constitutional law and it has not been made retroactively applicable to cases on collateral review. See 28 U.S.C. § 2255(h)(2).").

[2] The Government represented at oral argument that it is not seeking to enforce the plea waiver with respect to Marrero's motion for sentence reduction on section 3582(c)(1) grounds.

at 107 ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."); see also United States v. Watson, No. 10-cr-910 (JSR), 2013 WL 6504393, at *2 (S.D.N.Y. Dec. 11, 2013) (enforcing waiver of defendant's right to apply for sentence modification pursuant to § 3582(c)).

II. Compassionate Release Under Section 3582(c)(1).

Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C.§ 3582(c)(1)(A)(i).[3] As a threshold matter, the government does not dispute that Marrero has exhausted his administrative remedies. On July 28, 2020, Marrero filed a request for compassionate release with the warden of his facility. His request was denied on September 2, 2020. (Doc 553-1).

Under section 3582(c)(1), district courts are permitted "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). The Court must also consider the "factors set forth in section 3553(a) to the extent they are applicable . . . ." 18 U.S.C. §

---

[3] Section 3582(c)(1)(A) also requires consideration of whether a sentence reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." The Second Circuit "recently held that United States Sentencing Guideline § 1B1.13—the policy statement 'applicable' to compassionate-release motions brought by the Director of the Bureau of Prisons—is not 'applicable' to compassionate-release motions brought by incarcerated defendants." United States v. Roney, 2020 WL 6387844, at *3 n.1 (2d Cir. Nov. 2, 2020) (citing United States v. Brooker, 976 F.3d 228, 235–36 (2d Cir. 2020)).

3582(c)(1)(A).

Marrero asserts that the purported effect of Amendments 782 and 788 and Townsend on what his guidelines calculation would have been if he was sentenced today is relevant to his section 3582(c)(1) motion. The Court accepts Marrero's counsel's assertion that if he had been sentenced today his guideline calculation would not include a career offender enhancement and his guideline range would be 120 to 150 months' imprisonment. Marrero previously brought a section 2255 motion asserting that he should not have been sentenced as a career offender and that motion was denied for reasons stated. (Opinion and Order of Aug. 27, 2018; Doc 522). The Court today rejects his motion on section 3582(c)(2) grounds to be resentenced without consideration of the career offender guideline for reasons that have been explained.

While a Court should consider "all possible reasons for compassionate release" advanced by a defendant, Brooker, 976 F.3d at 237, failed and recycled legal arguments will rarely tip the scale in favor of granting a section 3582(c)(1) motion.[4] A likelihood or even certainty that the defendant would receive a lower sentence if sentenced today is not, standing alone, an extraordinary and compelling reason for a sentence reduction.[5] The Court considers Marrero's argument that his sentence would have been lower if he were sentenced today in the context of the overall mix of information presented on his motion.

---

[4] An exception to the Court's broad discretion is that rehabilitation alone may not be considered an extraordinary and compelling reason for a sentence reduction. Brooker, 976 F.3d at 237-38.

[5] In a post Brooker ruling, Judge Sullivan, sitting in the district court, after considering an array of section 3553(a) factors, denied a motion for compassionate release under section 3582(c)(1) of a defendant who was sentenced to a mandatory life term for a heroin conspiracy conviction but would have been subject to a lower mandatory minimum of 25 years imprisonment, if sentenced today. Musa v. United States, No. 19-cv-9130 (RJS), 2020 WL 6873506, at *6-7 (Nov. 23, 2020) ("[T]his change in the law is not enough, standing alone, to automatically merit [defendant's] release.").

The impact of incarceration on Marrero's physical and medical condition because of the special risks to him from the COVID-19 pandemic may be properly considered on a motion for a sentence reduction under 3582(c)(1). Marrero suffers from Type 2 diabetes. (PSR ¶ 102). According to the Center for Disease Control, "[a]dults of any age" with Type 2 diabetes are at an "increased risk of severe illness from the virus that causes COVID-19."[6] The Court concludes that Marrero, at age 54, faces elevated risks if he were to be infected by the COVID-19 virus.

The Court recognizes that individuals with pre-conditions such as Type 2 diabetes are at a heightened risk of serious consequences from the virus, if infected, whether they are at liberty or imprisoned. A person who is at liberty, however, has an arguably greater ability to avoid infection because of his freedom to quarantine, social distance or utilize personal protective equipment as he chooses, options that are not always available to a person who is incarcerated. The Court also acknowledges that a person at liberty has the freedom to select a medical provider of his choosing in the event he contracts the virus and this, again, an incarcerated person does not have the same option.

But the medical care received by Marrero, who resides at USP Atlanta, has not been shown to be inadequate.[7] Based on the available data, the number of new cases of the virus at USP Atlanta is at a manageable level. Presently, there are 5 confirmed active cases among inmates at USP Atlanta and 8 reported cases for staff.[8] Out of a total population of approximately 1,700 inmates, there have been 77 cases at the facility since the start of the

---

[6] People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020).

[7] The medical records submitted with Marrero's application are from 2016 (doc 553-11) and note that his diabetes is "[c]urrently managed with metformin 500mg daily." At the time of this evaluation, Marrero's blood pressure was 114/76. An $SAO_2$ test measuring oxygen saturation levels was administered without remarkable results, and it was noted Marrero was clear to auscultation and did not have wheezing.

[8] COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/ (Last Accessed Dec. 2, 2020).

pandemic. In the case of USP Atlanta, protocols have been reasonably effective in stemming the spread of the virus at least at the present time. That other BOP facilities in other locations have experienced outbreaks does not necessarily point to an unreasonably high risk at this facility.

Application of relevant section 3553(a) factors counsel against a grant of sentence reduction. As detailed in the PSR, Marrero's criminal history reflects a pattern of dangerous conduct. (PSR ¶¶ 63-81). In July 1990, Marrero was found in possession of five loaded firearms and convicted of criminal possession of a weapon in the second and third degree. Marrero was released from prison in 2001 but less than a year later was arrested for selling heroin to an undercover police officer. Marrero pled guilty to criminal sale of a controlled substance in the 5th degree and received a five-year sentence. In 2006, Marrero was then arrested for and pled guilty to a new controlled substance offense. He was released on parole in February 2010, but thereafter was arrested for the instant offense of conspiring to distribute between one to three kilograms of heroin only 14 months later.

Marrero's original sentence reflected the need to protect the public from further crimes. The Court summarized Marrero's prior criminal history at the time of sentencing:

> The defendant has a lengthy criminal history dating back to age 16. Many of the convictions because of their age do not factor into the criminal history points. Starting at age 16 he was adjudicated a juvenile delinquent because he took a gold chain and medallion from a 16-year-old female at gunpoint. He had convictions for bail jumping, disorderly conduct, attempted sale of a controlled substance. This is all ages 19, 20, 21. Age 23, criminal possession of a weapon in the second degree, arising out of possession of five loaded firearms and his actions to prevent a 23-year-old female from leaving the residence. His parole was revoked in that case. Also a conviction at age 35 for criminal sale of a controlled substance in the fifth degree. Age 40, criminal possession of a controlled substance in the third degree.

(Sentencing Tr. at 11).

Marrero was 44-45 years old at the time he committed the offenses, and he is 54 years old today. He is not serving a sentence for conduct committed at an immature age.

Marrero willingly participated in a drug-trafficking organization responsible for distributing significant quantities of controlled substances. As the Court noted at sentencing, such conduct leads to both violence and a destruction of health in the community. (Sentencing Tr. at 12). Marrero's criminal history further provides an increased risk of recidivism. A June 2019 study by the United States Sentencing Commission found that federal firearm offenders (Marrero is a state firearms offender) are rearrested at a higher rate than other offenders. They "continued to recidivate later in life than non-firearms offenders," and "recidivated at nearly twice the rate of non-firearms offenders among those released after age 50."[9] A recent study published by the Sentencing Commission focused on recidivism rates for inmates granted sentence reductions based on retroactive application of Amendment 782. This study found that there was no difference in recidivism rates for inmates receiving sentence reductions as compared to those who completed their sentences and that an advanced age at release positively influenced recidivism. However, for individuals like Marrero with Criminal History Category V or Category VI, the observed rate of rearrest was over 40%.[10]

        The Court again considers, as it did at the time of original sentencing, Marrero's difficult and tragic upbringing. At the original sentencing, the Court also considered his health condition.

        Marrero has been disciplined for seven infractions over the last nine years, including an incident on June 26, 2020 in which he was charged with possession of a hazardous tool. (Doc 553-6). During that same time period, he has received four certificates of completion.

---

[9] Recidivism Among Federal Firearms Offenders, United States Sentencing Commission, at 4 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf (June 2019).

[10] Retroactivity & Recidivism: The Drugs Minus Two Amendment, United States Sentencing Commission, at 6, 17–18 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200708_Recidivism-Drugs-Minus-Two.pdf (June 2020).

(Doc 553-4). Marrero's present application also includes letters from BOP staff highlighting his work ethic and character, as well as letters of support from friends and family. (Doc 553-5; 558-1–558-4).

Marrero has served approximately 115 months or 64% of his 180-month sentence. He has a significant amount of time remaining on his sentence and with good time credit he is projected to be released in 41 months. Reducing his sentence to time served or home confinement is unwarranted on this record and at this time.

CONCLUSION

Taking into account all arguments presented by Marrero in favor of a sentence reduction and considering them both in isolation and in combination, and considering all of the section 3553(a) factors, the Court concludes that Hilton Marrero has not demonstrated extraordinary and compelling reasons for a reduction in his sentence and his motion is therefore DENIED without prejudice.[11] The Clerk is directed to terminate the motion (Docs 553, 558).

SO ORDERED.

Dated: New York, New York
       December 3, 2020

P. Kevin Castel
United States District Judge

---

[11] The Court commends the team representing Mr. Marrero that has included law students associated with the Lincoln Square Legal Services, Inc. for their fine and thorough presentation of written and oral arguments.